# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 23-215 |
| KEYON VINCENT | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Keyon Vincent participated in two robberies in two days, including one which left an unarmed store clerk dead. Vincent was arrested the day after the murder when police tracked and stopped him and several of his co-defendants following his third store robbery in 72 hours. In addition to these three robberies, the defendant participated in a fourth robbery in August 2022. While the government does not believe the defendant intended to hurt anyone, he clearly understood right from wrong. His actions, and their unintended consequences, left a man dead on the floor of a gas station and a family and community devastated. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the advisory guideline range of 360 months to life, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors.

*continued* . . .

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

I.    **BACKGROUND**

On June 26, 2024, the defendant pled guilty to four counts of robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951, one count of possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), and murder in the course of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(j). During his plea colloquy, the defendant admitted that he participated in three "strong-arm" robberies of cell phone stores, as well as the gunpoint robbery

---

*See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

of a gas station. He was apprehended along with co-defendants Robert Crafter, Tori Sanders, and Mubarak Brown when police stopped the group on January 18, 2023 after they completed the robbery of a cell phone.

II.    **SENTENCING CALCULATION**

    A.    **Statutory Maximum Sentence.**

The maximum sentence that may be imposed on the defendant is a life term of imprisonment, a term of supervised release of five years, a fine of $1,250,000, and a special assessment of $500.[2]

    B.    **Sentencing Guidelines Calculation.**

The Probation Office correctly calculated the defendant's advisory guideline range as follows:

Each robbery count represents a distinct harm and is therefore grouped separately. Counts Three and Five are grouped together because Count Five embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts. USSG § 3D1.2(c). The highest applicable offense level is 43, for the robbery and murder counts. USSG §§2A1.1(a) and 2B3.1(c)(1). The remaining groups are not counted as they are nine or more levels less serious than the highest offense level group. The combined adjusted offense level is therefore 43. USSG §3D1.4. The defendant's timely acceptance of

---

2 The government will move to dismiss count four, charging the use, carrying, and discharge of a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)) so there are no mandatory minimum sentences applicable to the defendant.

responsibility results in a three-point reduction, pursuant to USSG §§3E1.1(a) and (b). This reduction results in an offense level of 40.

The defendant's lengthy juvenile and adult criminal history results in a criminal history score of seven. Because the defendant was on probation in Delaware County at the time of these offenses, an additional point is added. USSG §4A1.1(e). This results in a criminal history category of IV. The resulting guidelines are 360 months to life imprisonment.

## III.    ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a).

### A.    Consideration of the 3553(a) Factors Regarding Imprisonment.

The defendant committed a series of cell phone store robberies, each of which terrified customers and employees. It was the defendant who taught co-defendants how to smash cell phones off their mounting brackets, and it was the defendant who knew Chihean Jones and introduced him to the group. Although the defendant believably stated he did not want to hurt anyone during these offenses, the consequences of his repeated criminal actions were both foreseeable and tragic. His short-sighted decision to bring Chihean Jones into the fold proved devastating.

To be sure the defendant's life to this point can only be described as bleak. He only met his father a few times and his mother is unstable due to a lengthy history of mental health issues and crack cocaine abuse. As a result, the defendant spent most of his youth in foster homes and juvenile placement, where he suffered repeated and horrific abuse. The defendant repeated the ninth grade three times and never completed high school. He has not obtained his GED. As an adult, after he no longer qualified for placement in DHS custody, the defendant lived primarily in shelters, or on the street. His own mental health struggles are voluminous and well-documented within the presentence report. The defendant made several credible attempts to commit suicide while incarcerated. Likely because of these issues, the defendant also has a long history of substance use disorder, including repeated violations while incarcerated at the FDC. The defendant's devastating childhood certainly provides some basis for mitigation, but nevertheless

his participation in this crime spree, and its terrible consequences, counsels in favor of a lengthy sentence.

Further, the defendant's history supports the need for significant incarceration. He has approximately ten prior juvenile adjudications or adult convictions for theft and related offenses. One of his previous theft arrests came after he and an accomplice fled in a car at high speed down a sidewalk, before crashing into a fire hydrant. The car exploded into flames shortly after the crash. He was under court-ordered supervision at the time he committed these four robberies and murder.

The defendant's behavior while under court supervision has been poor, with repeated violations, usually the result of a new arrest for similar or identical conduct. It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. *Id.*

In addition, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

The defendant clearly needs substantial support, including treatment for substance use disorder, psychological counseling, and continued educational development. The sentence imposed should be structured in such a way as "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). Restitution is not an issue in this case. § 3553(a)(7).

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence, absent any additional recommendations within the sealed supplement. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

**B.**    **Supervised Release.**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, the maximum term of supervised release of five years is warranted. As explained above, the defendant presents a lengthy record of criminal conduct. Close supervision

- 8 -

following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), and assures that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2. The Commission adds: "In a case in which a defendant sentenced to imprisonment is an abuser of controlled substances or alcohol, it is highly recommended that a term of supervised release also be imposed." § 5D1.1 app. note 3.

## IV.    CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a significant sentence that fully accounts for the scope and severity of the defendant's criminal conduct is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Christopher E. Parisi*
CHRISTOPHER E. PARISI
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

Maggie Grasso, Esq.

/s Christopher E. Parisi
CHRISTOPHER E. PARISI
Assistant United States Attorney

DATED:  March 30, 2026.